UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JONARD BRANDON MCDANIEL,                    CIVIL NO. 11-571 (PJS/JSM)

      Petitioner,

v.                                                          **REPORT AND RECOMMENDATION**

JOAN FABIAN,

      Respondent.


JANIE S. MAYERON, United States Magistrate Judge

      This matter came before the undersigned on Jonard Brandon McDaniel's Petition

under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody

("Petition") [Docket No. 1].  The State answered the Petition, asking that the petition be

denied in its entirety as meritless.  [Docket No. 6].  The matter was referred to this Court

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1.

## I.    PROCEDURAL BACKGROUND

      On December 12, 2006, Petitioner Jonard Brandon McDaniel ("Petitioner") was

convicted of aiding and abetting first-degree premeditated murder and committing a

crime for the benefit of a gang.  Respondent's Appendix ("Appx.") (Petitioner's Brief to

Minnesota Supreme Court), p. 7 [Docket No. 8].[1]  Petitioner appealed his conviction to

the Minnesota Supreme Court and filed a post-conviction petition for relief with the

---

[1]     Respondent's Appendix includes McDaniel's brief to the Minnesota Supreme Court, McDaniel's pro se supplemental brief to the Minnesota Supreme Court, the State's brief to the Minnesota Supreme Court, a copy of the Minnesota Supreme Court's decision and certain pages from the trial transcript (Tr. 1011-1022, 1125-1148, 1658-1673, 1677-1759, 1985-2026, 2052-2068).

district court.  Id., p. 8.  On January 21, 2010, following the denial of Petitioner's post-conviction petition for relief to the district court, the Minnesota Supreme Court affirmed Petitioner's conviction.  State v. McDaniel, 777 N.W.2d 739 (Minn. 2010).  On March 7, 2011, Petitioner filed the instant habeas corpus petition [Docket No. 1].  On April 8, 2011, Respondent filed her Response, Memorandum and Appendix.  [Docket Nos. 6-8].  On April 14, 2011, Petitioner filed a "Petition for Stay of Habeas Corpus." [Docket No. 10].  That motion was based on Petitioner's assertion that he had evidence that had not been exhausted in the state courts, he needed additional time to submit a petition for post-conviction relief and he needed time to retain counsel.  Id.

On April 27, 2011, this Court denied Petitioner's motion without prejudice.  Order [Docket No. 11].  This Court explained:

> The Supreme Court has authorized the federal district courts to stay a habeas corpus proceeding to allow a state prisoner to return to the state courts for the purpose of exhausting his state court remedies for a new claim that was not previously raised in the state courts.  Rhines v. Weber, 544 U.S. 269 (2005).  However, such stay orders are not to be granted routinely, but only where there are unusual and extenuating circumstances that precluded the Petitioner from pursuing all of his claims for relief in the state courts in a proper and expeditious manner.  Because granting a stay effectively excuses a Petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the Petitioner's failure to exhaust his claims first in state court.

Order, pp. 3-4 (quoting Rhines, 544 U.S. at 277 (emphasis added)).  Finding that Petitioner's motion did not satisfy the "good cause" requirement described in Rhines, the Court required Petitioner to file a new motion.  Id., pp. 3-4.  Petitioner filed a second motion to stay and two affidavits in support of the motion.  See Affidavit of Jonard McDaniel ("McDaniel Aff.") [Docket No. 13]; Affidavit of Jermaine Mack-Lynch ("Mack-

Lynch Aff.") [Docket No. 14];  The Mack-Lynch affidavit was dated August 4, 2010, and stated that Mack-Lynch falsely testified at trial against Petitioner and that he actually did not see who committed the murder leading to Petitioner's conviction.  Mack-Lynch Aff. Petitioner's affidavit stated that Mack-Lynch sent him the affidavit in August, 2010. McDaniel Aff., ¶2.  Petitioner contended that this "new evidence" would compel the trial court to respond favorably to his petition for post-conviction relief because Mack-Lynch was the only witness who testified to seeing Petitioner at the crime scene.  Id., ¶4.

This Court concluded that Petitioner failed to satisfy the good cause standard for a stay of his habeas proceedings.  Order, February 8, 2012, p. 3 [Docket No. 17].  The Court noted that Petitioner had in his possession Mack-Lynch's affidavit for eight months after the Minnesota Supreme Court's decision and over seven months before filing his habeas petition.  Id., p. 4.  Yet he did not renew his petition for post-conviction relief after obtaining the affidavit and never explained why he failed to pursue post-conviction relief with the state court based on the affidavit during the intervening seven months between his receipt of the affidavit and the filing of his habeas petition on March 7, 2011.  Further, Petitioner's claim that the Mack-Lynch affidavit would compel the trial court to respond favorably was not consistent with facts described by the Minnesota Supreme Court, which noted that several witnesses placed Petitioner at the crime scene and engaging in conduct consistent with guilt of a murder.  Id., p. 5.  This Court denied Petitioner's Motion to Stay and indicated it would adjudicate the case based solely on the claims Petitioner presented in his current habeas petition and Respondent's Response.  Id.

## II.   FACTUAL BACKGROUND

On June 1, 2006, Petitioner was indicted for aiding and abetting Cornelius H. Jackson ("Jackson") and LaMonte R. Martin ("Martin") in the first degree murder of Christopher Lynch ("Lynch") and for committing a crime for the benefit of a gang pursuant to Minn. Stat. § 609.185(a)(1) and § 609.229, subd. 2. <u>McDaniel</u>, 777 N.W.2d at 742-743. On August 11, 2006, the trial court granted the State's motion to join Petitioner, Jackson and Martin for trial.   Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 6.   Petitioner's case was severed on August 14, 2006, for a separate trial. <u>Id.</u>  At trial, the jury found the following:

On May 3, 2006, 19-year-old Lynch was shot and killed in North Minneapolis. <u>McDaniel</u>, 777 N.W.2d at 743.  Jermaine Mack-Lynch ("Mack-Lynch"), a member of the Tre Tre Crips gang, testified that Petitioner, Jackson and Martin were members of the One-Nines gang, a rival of the Tre Tre Crips.   <u>Id.</u>  Mack-Lynch testified that he and Lynch were going to Charles Pettis's house and saw Petitioner, Jackson, and Martin drive by in a white Chevy Malibu. <u>Id.</u>  Petitioner was in the front passenger seat.  <u>Id.</u> When the Malibu stopped, Jackson and Martin got out of the car, armed with guns.  <u>Id.</u> Mack-Lynch and Lynch ran down an alley and saw the white Malibu "fl[ying] back" and "fl[ying] on this way."  <u>Id.</u>  They also saw Jackson and Martin come out from behind a house with guns in their hands.  <u>Id.</u>  Lynch, who had asthma and was heavyset, said he was tired, and Mack-Lynch told him he would continue down the alley so that Jackson and Martin would chase him instead, allowing Lynch to cut through a yard to Pettis' house.  <u>Id.</u>  When Mack-Lynch arrived at Pettis's house, he told Pettis that One-Nines were chasing him and asked if Lynch was inside the house.  <u>Id.</u>  Pettis said that he was not and the two ran outside to look for Lynch.  <u>Id.</u>  As they left the house, they heard

4

gunshots and Mack-Lynch saw Jackson and Martin "shooting at something" in the yard across the street. Id. Jackson and Martin got into the white Malibu and drove away. Id. Mack-Lynch identified the driver as an African-American male.[2] Mack-Lynch and Pettis found Lynch in the backyard where the shots were fired. Id. Mack-Lynch told the police that Petitioner, Jackson, and Martin were the three occupants of the white Malibu, and he identified all three from a photo lineup. Id.

Pettis testified that he saw Jackson and Martin standing in a yard across from his house with guns in their hands. Id. at 743-44. He then saw Jackson and Martin jump into a white car and found Lynch lying in the yard. Id. at 744. Pettis identified the driver of the car as an African-American male. Id.

A minor child who lived next door testified that he saw two men chase Lynch, saw Lynch stop and put his hands up saying "'I quit, I quit'" before one of the men shot him six or seven times. The child saw the two men get into a white car after the shooting. Id.

The State called Paris Patton to testify at trial. Patton was then in federal custody on drug and firearms offenses. Patton testified that he was a former member of the One-Nines gang and that Petitioner, Jackson and Martin were also members. Id. Patton described the rivalry between the One-Nines and the Tre Tre Crips gangs as involving "gunfights." Id. Patton testified that a few days after the shooting, Petitioner asked him if he had a gun because he had to get rid of his. Id. Petitioner initially told Patton, "we killed that little boy." Id. Petitioner also told Patton that he had tried to box in Mack-Lynch and Lynch and as a result, crashed the car. Id. Petitioner said that "Lynch was 'on his knees begging for his life' when Jackson shot him and that Lynch

---

[2]     Petitioner is African-American. McDaniel, 777 N.W.2d at 743.

was shot because 'they couldn't get to Jermaine [Mack-Lynch].'" Id. Patton said that Mack-Lynch was targeted because he was a member of the Tre Tre Crips. Id.

Renardo Smith, a member of the Conservative Vice Lords gang, testified that Petitioner said that "he didn't even do nothing, it was Monte [Martin] and Corn [Jackson] who did it, he was just driving." Id.

Minneapolis police began searching for Petitioner. Officer Cheri Peterson testified that she spoke with Petitioner's mother, girlfriend, cousin and a friend four times. Id. at 744. Each time, she left a card and explained to them that there was a warrant for Petitioner's arrest. Id. Petitioner called Officer Peterson and told her he was not going to turn himself in. Id. at 745.

Petitioner was arrested at a home in South Minneapolis. Id. A resident of the house testified that she was in the basement and went upstairs to wake her sister when the police arrived. Id. When she went back downstairs she saw Petitioner come downstairs and hide under a bed. Id. Officers found Petitioner hiding under the bed and arrested him. Id. At trial, Petitioner testified in his own defense. Id.

A jury convicted Petitioner of first degree intentional murder and a crime committed for the benefit of a gang. Petitioner was sentenced to life imprisonment without the possibility of release. Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 7. Petitioner appealed his conviction to the Minnesota Supreme Court, which affirmed the judgment on January 21, 2010. McDaniel, 777 N.W.2d at 739, 754. On

March 7, 2011, Petitioner filed a habeas corpus petition alleging the following grounds for relief:[3]

(1)     The trial court erred by allowing the State to introduce evidence of flight where there was no evidence that Petitioner knew he was a suspect.

(2)     The trial court erred by allowing the State to introduce gang evidence where the evidence was extremely prejudicial.

(3)     The prosecutor deprived Petitioner of a fair trial by committing prejudicial misconduct.

(4)     The trial court violated Petitioner's constitutional right to be free from cruel or unusual punishment by imposing a life sentence, where the sentence was not proportionate to his intent.

(5)     The trial court failed to determine if Jackson was actually unavailable for cross-examination when it ruled that Patton's testimony regarding Jackson's statements to him was admissible.[4]

Petition, pp. 4-6.

## III.     RELEVANT LAW BEARING ON HABEAS PETITIONS

### A.     <u>Habeas Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the

---

[3]     Petitioner provided no facts and no argument in support of his Petition.  This Court relied on Petitioner's arguments to the Minnesota Supreme Court when analyzing the Petition, as Petitioner presented no other information.

[4]     Although not clear from the Petition, Petitioner is referencing an issue he raised in his <u>pro</u> <u>se</u> supplemental brief to the Minnesota Supreme Court.  Appx., pp. 77-95. There, Petitioner objected to the State's characterization of Jackson as "unavailable" because Jackson's lawyer had advised the State's attorney that if the State called Jackson, he would invoke his Fifth Amendment right to remain silent.  The state court allowed Patton to testify that he heard Jackson describe how he shot Lynch.  Resp. Mem., p. 23.

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, while Petitioner does not state whether he is proceeding under 28 U.S.C. § 2254(d)(1) or (2), the substance of his Petition indicates that he is raising challenges under both § 2254(d)(1) and (2).

The Eighth Circuit described review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it 'confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent' but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court 'unreasonably applies' federal law when it 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.' Id. at 407.
>
> A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' Id. at 411.

8

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006), cert. denied 549 U.S. 1223 (2007). Under this standard, federal courts "must deny a writ—even if [they] disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

However, where the state court did not explicitly analyze or adjudicate a petitioner's claims under federal law on appeal, although the federal nature of the claims was fairly presented to the state court, the less deferential standard of review for habeas corpus cases before AEDPA should be applied. See Middleton v. Roper, 455 F.3d 838, 856 (8th Cir. 2006), cert. denied, 549 U.S. 1134 (2007) (where state court did not adjudicate constitutional claim on the merits, court reviewed district court's factual findings for clear error and conclusions of law de novo); Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004) ("Under the … AEDPA, we apply a deferential standard of review to state court resolutions of law and fact only if the state court adjudicated the prisoner's claim on its merits. 28 U.S.C. § 2254(d); Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002), cert. denied, 537 U.S. 919 (2002) and reh'g denied, 537 U.S. 1069 (2002); Kittrell v. Von Wald, Civ. No. 05-2796 (DSD/FLN), 2007 WL 1114816, at *5 (D. Minn. April 13, 2007) ("where the state courts never discussed Petitioner's current constitutional claims in any detail," the court reviewed petitioner's claims under the pre-AEDPA standard of review, "i.e. without giving any special deference to the underlying state court decisions"); see also Bertram v. Bertsch, Civ. No. 1:08-093, 2009 WL 1688183, at * 11 (D. N.D. June 16, 2009) ("If AEDPA deference is not appropriate, then the pre-AEDPA standard of de novo review

applies to questions of law and mixed questions of law and fact." (citing Brown v. Allen, 344 U.S. 443 (1953); Williams, 529 U.S. at 400-402 (O'Connor, J., concurring opinion); Canaan v. McBride, 395 F.3d 376, 383 (7th Cir. 2005); Clemons v. Luebbers, 381 F.3d 744, 756 n.8 (8th Cir. 2004); Taylor, 329 F.3d at 967-68; Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)); Appel v. Horn, 250 F.3d 203, 211-12 (3rd Cir. 2001)). "Under . . . [the pre-AEDPA] standards, we review the District Court's conclusions of law de novo, and give the state court's factual findings a 'presumption of correctness.'" Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (quoting Jones v. Delo, 258 F.3d 893, 901 (8th Cir. 2001) (citations omitted)), cert. denied, 537 U.S. 909.

By its terms, § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds. Thus, even if lower federal court decisions support Petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence." Id. Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a Petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence. This reduces to a

question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue."); see also Engesser, 457 F.3d at 736-37 ("To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue.") (citation and marks omitted).

Under § 2254(d)(2), a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," only if it is shown that the state court's presumptively correct factual findings are not supported by the record. 28 U.S.C. § 2254(e)(1). Pursuant to § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

**B.     Exhaustion and Procedural Default**

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also U.S. v. Armstrong, 554 F.3d 1159, 1166 (8th Cir. 2009) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (quoting Smith v. Phillips, 455 U.S. 209, 221,(1982) (citations omitted)), cert. denied, 129 S.Ct. 2805.

Therefore, before a federal district court can review a federal constitutional claim of a state prisoner in a § 2254 habeas corpus proceeding, "the prisoner must exhaust his remedies in state court." "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This requirement is explained by the United States Supreme Court as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.' . . . To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) (citation omitted).

A federal claim is deemed to be unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner has the right, under state law, to raise the

claim by any available procedure.  <u>See</u> 28 U.S.C. § 2254(c).[5]  These requirements are based on the principles of comity and federalism; their purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners.  <u>See</u> <u>O'Sullivan</u> 526 U.S. at 844 (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 515-516 (1982); <u>Darr v. Burford</u>, 339 U.S. 200, 204 (1950)).

While a state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, nevertheless, if a claim is based on the federal constitution, the prisoner must "fairly present the facts and substance of his habeas claim to the state court."  <u>Middleton</u>, 455 F.3d at 855 (citation omitted); <u>see</u> <u>also</u> <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997) ("Mere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.'") (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995) (per curiam)).  Additionally, "[t]o be fairly presented a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement."  <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir.), <u>cert</u>. <u>denied</u>, 546 U.S. 844 (2005) (internal quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Adams v. Robertson</u>, 520 U.S. 83, 89

---

[5]     28 U.S.C. § 2254(c) states: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

n. 3 (1997) ("passing invocations of 'due process' . . . [that] fail to cite the Federal Constitution or any cases relying on the Fourteenth Amendment . . . [do] not meet our minimal requirement that it must be clear that a <u>federal</u> claim was presented") (emphasis in original) (citation omitted).

"Ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin</u>, 541 U.S. at 32. However, even if the opinion of the state court of appeals does not make any mention of a federal claim, a brief submitted to that court that sets forth the federal constitutional basis for a claim can satisfy the requirement that the petitioner "apprise the state court of his claim that the … ruling of which he complained was not only a violation of state law, but denied him [rights] guaranteed by the [federal constitution]." <u>Dye v. Hofbauer</u>, 546 U.S. 1, 4 (2005) (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995) (per curiam)).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in <u>Rhines v. Weber</u>, [544 U.S. 269]. . . [2005]." <u>Armstrong v. Iowa</u>, 418 F.3d 924, 926 (8th Cir. 2005), <u>cert</u>. <u>denied</u>, 546 U.S. 1179 (2006). However, when a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly "unexhausted," but rather, it has been "procedurally defaulted." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>McCall</u>, 114 F.3d at 757. In other words, if there is still a

state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted." See Armstrong, 418 F.3d at 926 ("if no state court remedy is available for the unexhausted claim – that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim...'") (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996)). See also Middleton, 455 F.3d at 855 ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'") (quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.) (en banc), cert. denied, 517 U.S. 1215 (1996).

In sum, a constitutional claim is procedurally defaulted if the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman, 501 U.S. at 750 (1991); McCall, 114 F.3d at 757.

A claim that has been procedurally defaulted cannot be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750.

"'Cause' . . . must be something external to the petitioner, something that cannot fairly be attributed to him. . . . For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by

officials' . . . made compliance impracticable. . . .'" <u>Coleman</u>, 501 U.S. at 753 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488) (emphasis in original). "Prejudice" that will overcome a procedural default requires a showing by a petitioner "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Armstrong v. Kemna</u>, 590 F.3d 592, 606 (8th Cir. 2010), <u>cert.</u> <u>denied</u>, 130 S.Ct. 3369 (2010) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)) (emphasis in original). A court need not determine the "cause" issue, if it first determines that the petitioner has not made a showing of prejudice. <u>Id.</u> at n.12.

The "fundamental miscarriage of justice" exception requires a "showing, based on <u>new evidence</u>, that 'a constitutional violation has probably resulted in the conviction of one who is <u>actually innocent</u>.'" <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1161 (1996) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (emphasis added)). Thus, for the miscarriage of justice exception to excuse a procedural default, it is not enough for a petitioner to point out errors at trial; instead, he must offer some new evidence which demonstrates that he is innocent of the crime for which he was convicted.

If a petitioner is unable to show cause and prejudice, or a miscarriage of justice, the procedural default cannot be excused, and the court will deny the claim without addressing its merits. <u>See</u> <u>Carney v. Fabian</u>, 441 F.Supp.2d 1014, 1029 (D. Minn. 2006).

With these standards in mind, this Court now turns to Petitioner's request for relief.

## IV.    DISCUSSION

### A.    Ground One: Admission of Evidence of Petitioner's Flight

Petitioner argued that the trial court somehow violated his Fifth Amendment right to remain silent by admitting testimony from Officer Cheri Peterson that when she left her business card with Petitioner's mother, it was Petitioner's opportunity to "come in and talk to investigators to give his side of the story in a case he was involved in." Appx., p. 170 (Tr. 1130).   According to Petitioner, he was under no obligation "to give his side of the story" and by allowing Peterson's testimony, the State was implying that he had such an obligation.   Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 25.

In opposition, Respondent argued that evidence of Petitioner's flight on the day he was arrested was properly admitted as relevant to Petitioner's consciousness of guilt pursuant to Minn. R. Evid. 401.   Respondent's Memorandum ("Resp. Mem."), pp. 8-9 [Docket No. 7].   According to Respondent, Petitioner's pre-arrest actions indicated that he already knew he was a suspect in Lynch's murder, and therefore the evidence was relevant in showing his guilt.[6]   See id., p. 9.

"In the habeas context 'rules of evidence and trial procedure are usually matters of state law.   A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'" Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting Adail v. Wyrick, 711

---

[6]     In support of this contention, Respondent noted that Petitioner's family members told him to contact the police and that the police had informed him that he was wanted for murder.   McDaniel, 777 N.W.2d at 746.   Furthermore, "Petitioner was hiding under a bed when police arrested him, and he made numerous statements regarding his knowledge that the police [were] going to be coming . . . and that he already knew that the police were looking for him."   Id. at 746-47 (internal quotation marks omitted).

F.2d 99, 102 (8th Cir. 2003)); see also Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) ("[q]uestions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquires only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process."); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985) (a habeas petitioner must establish that the evidentiary ruling was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair.").

Under Minnesota law, evidence of flight may be admissible to show consciousness of guilt. McDaniel, 777 N.W.2d at 746; State v. Harris, 589 N.W.2d 782, 790 (Minn. 1999); State v. Bias, 419 N.W.2d 480, 485 (Minn. 1988). Such evidence, although relevant, must still comport with Minn. R. Evid. 403, which requires that evidence be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, is misleading to the jury, or would result in delay. Because Ground One presents an evidentiary issue, this Court assumes that Petitioner is bringing the claim under 28 U.S.C. § 2254(d)(2).

The evidence presented at trial concerning Petitioner's actions leading up to his arrest was as follows:

> Officer Petersen stated that after the May 3 shooting, she spoke with McDaniel's mother, girlfriend, cousin, and friend on four separate occasions. During each encounter, she told them that a warrant had been issued for McDaniel's arrest, left business cards with all four, and asked them to have McDaniel call Officer Petersen. A few hours after Officer Petersen's visit to McDaniel's girlfriend's apartment, McDaniel called Officer Petersen and told her that he was not going to turn himself in. Officer Petersen asked Minneapolis police officer Gerald Wallerich to talk to McDaniel because Officer Wallerich had spoken with McDaniel in the past.

The police arrested McDaniel on May 23 at a home in South Minneapolis. A resident of the house testified that she was initially in the basement, and then went upstairs to wake her sister when she heard the police arrive. When the woman went back downstairs, she saw McDaniel come down and hide under the bed. The police came downstairs and found McDaniel hiding under the bed.

McDaniel, 777 N.W.2d at 745-46.

The Minnesota Supreme Court described Petitioner's federal constitutional challenge to the admission of this evidence this way:

McDaniel also argues that because he has a constitutional right not to "give his side of the story," the district court admitted evidence of his alleged flight in error, which substantially influenced the jury's decision.

***

The United States Supreme Court and this court have generally drawn a line between pre-Miranda warning silence and post-Miranda warning silence. Although a prosecutor cannot use a defendant's post-Miranda warning silence for impeachment purposes, Doyle v. Ohio, 426 U.S. 610, 611, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); State v. Billups, 264 N.W.2d 137, 139 (Minn.1978), impeachment of an accused by his pre-arrest silence is not constitutionally improper when a defendant chooses to testify in his own defense, Jenkins v. Anderson, 447 U.S. 231, 238–39, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). See also Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926) (recognizing that no violation of the Fifth Amendment occurs when a defendant testifies in his own defense and is impeached with his prior silence). When a defendant testifies on his own behalf, he does so as any other witness and the State may impeach his credibility on cross-examination as is permitted for any other witness. Jenkins, 447 U.S. at 235–36, 100 S.Ct. 2124 (citing Grunewald v. United States, 353 U.S. 391, 420, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957)).

In Jenkins, the defendant was charged with first-degree murder, and the defendant claimed that he committed the crime in self-defense. 447 U.S. at 232, 100 S.Ct. 2124. The killing occurred on August 13, but the defendant did not turn himself in to the police until 2 weeks later. Id. At the trial, during both cross-examination and closing argument, the

> prosecutor attempted to impeach the defendant's credibility "by suggesting that the petitioner would have spoken out if he had killed in self-defense." <u>Id.</u> at 233–35, 100 S.Ct. 2124. In holding that such impeachment was permissible, the Court stated, "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." <u>Id.</u> at 238, 100 S.Ct. 2124.

<u>Id.</u>

The Minnesota Supreme Court found that the evidence was sufficient to demonstrate that Petitioner knew he was a suspect in Lynch's shooting. <u>Id.</u> at 747. Furthermore, Petitioner was hiding under a bed when the police arrested him and he made numerous statements that he knew that the police were looking for him and that "the police [were] going to be coming to where everyone was at." <u>Id.</u> Additionally, the trial court specifically cautioned the jury that Petitioner had "no legal obligation to turn [himself] in or to come in and tell [his] side of the story," thus avoiding "any appearance of comment on [Petitioner's] Fifth Amendment right against self-incrimination." <u>Id.</u>, n.1.

This Court concludes that the Minnesota Supreme Court's analysis of the testimony regarding Petioner's flight is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law. The United States Supreme Court has expressed reservations regarding the probative value of evidence of flight. <u>Wong Sun v. United States</u>, 371 U.S. 471, 483 n.10 (1963). Nonetheless, such evidence may be admissible to show consciousness of guilt. <u>See</u> <u>United States v. Scheffer</u>, 523 U.S. 303, 331, (1998) (Stevens, J. dissenting**)**; <u>United States v. Melson</u>, 7 F.3d 750, 752 (8th Cir. 1993); <u>United States v. Hankins</u>, 931 F.2d 1256, 1261 (8th Cir. 1991). Consistent with the Supreme Court's view of such evidence and governing Minnesota state law, the trial court admitted evidence of Petitioner's pre-arrest conduct.

For Petitioner to prevail on this ground, he must show that the state court's ruling regarding flight evidence was so "conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair." <u>Gee v. Groose</u>, 110 F.3d 1346, 1350 (8th Cir. 1997) (citation omitted). In this case, the flight evidence was a small part of the overall evidence admitted regarding Petitioner's guilt. If it was improperly admitted (and this Court has concluded that it was not), there has been no showing that it fatally impacted any other aspect of the trial.

For all of these reasons, this Court finds the evidence was properly admitted under Minnesota state law as consciousness of Petitioner's guilt. The Minnesota Supreme Court's affirmance of the trial court's evidentiary determination is presumed to be correct under 42 U.S.C. § 2254(e)(1), and was not contrary to established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented at trial. On this basis, the Court recommends dismissal of Ground One with prejudice.

### B.    Ground Two: Admission of Gang Evidence

The trial court allowed the testimony of Captain Michael Martin of the Minneapolis Police Department as the State's "gang expert." <u>McDaniel</u>, 777 N.W.2d at 739. Pursuant to Minn. R. Evid. 702, expert testimony is admissible if it will assist the jury in evaluating evidence or resolving factual issues. <u>Id.</u> (citing <u>State v. Grecinger</u>, 569 N.W.2d 189, 195 (Minn. 1997)). Petitioner claimed that "the trial court erred by allowing the State to introduce gang evidence where the evidence was extremely prejudicial . . . ." Petition, p. 4.

In response, Respondent emphasized that Petitioner's brief to the Minnesota Supreme Court on this issue made no reference to a "specific federal constitutional

right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." Resp. Mem., p. 10 (quoting <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997)). As a result, Petitioner failed to exhaust this claim and, under <u>State v. Knaffla</u>, 243 N.W.2d 737, 747 (Minn. 1976), he was barred from raising this claim again in state court by filing for post-conviction relief. <u>Id.</u>, pp. 10-11. Consequently, Petitioner procedurally defaulted on this claim. <u>Id.</u>, p. 11.

It is axiomatic that a federal habeas court "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." <u>McCall</u>, 114 F.3d at 757 (citing <u>Duncan v. Henry</u>, 513 U.S. 364, 365-366 (1995)).

In his direct appeal, Petitioner objected to the introduction of gang evidence as prejudicial and irrelevant; he did not allege and the Minnesota Supreme Court did not consider whether the evidence impinged upon a "federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." <u>Cox</u>, 398 F.3d at 1031; <u>see</u> Appx. (Petitioner's Brief to the Minnesota Supreme Court), pp. 22-27; <u>McDaniel</u>, 777 N.W.2d at 747-748. Therefore, he failed to fairly place this issue before the Minnesota Supreme Court.

Having determined that Petitioner failed to fairly present his federal habeas claims to the state court, the Court must now address whether Minnesota state law would prevent him from raising these claims in a state court. <u>See</u> <u>McCall</u>, 114 F.3d at 757 (citation omitted). Generally, when a petition contains unexhausted claims, the Court would recommend that the petition be dismissed without prejudice, so that Petitioner could return to the state courts and attempt to pursue his currently

unexhausted claims through the filing of a motion for post-conviction relief with the trial court.  See Minn. Stat. § 590.01 (allowing a convicted individual who claims that the conviction obtained or the sentence or other disposition made against him violated his rights under the Constitution or laws of the United States to commence a proceeding to secure relief by filing a petition to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence).  However, under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief."  State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).  This rule, called the Knaffla rule, is well-settled state law.  Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007).  Claims that are "known" include those available after trial and which could have been raised on direct appeal.  See Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006) (citation omitted).

There are two exceptions to the Knaffla rule.  First, if a claim is known to the petitioner at the time of an appeal but is not raised, it will not be barred if its novelty was so great that its legal basis was not reasonably available when the direct appeal was taken; and second, even if the claim's legal basis was sufficiently available, when fairness so requires the review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal.  See Townsend, 723 N.W.2d at 18 (citations omitted); see also Powers v. State, 731 N.W.2d 499, 502 (Minn. 2007) ("There are two exceptions to the Knaffla rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review.")

Based on the Knaffla rule, this Court concludes that if Petitioner filed another post-conviction petition to raise a federal due process violation in connection with the

admission of the gang evidence, under Minnesota law he would be barred from making such claim because the matter regarding the admissibility of this evidence had already been raised on direct appeal, the federal constitutional challenge was available to him at that time, and there is no evidence to suggest that this federal claim was unknown or so novel that could not have presented in the direct appeal. <u>See</u> <u>McCall</u>, 114 F.3d at 757-58 (based on the <u>Knaffla</u> rule, court concluded that Petitioner is precluded from returning to state court to raise a federal constitutional claim after a direct appeal where there is no evidence his federal claims were unknown or were so novel that their legal basis was unknown at the time of direct appeal). Further, there is nothing in the record from which this Court could find cause for the default and actual prejudice or a fundamental miscarriage of justice so as to excuse Petitioner's procedural default of the gang evidence claim. On this basis, the Court finds that Petitioner has procedurally defaulted on this claim.

For these reasons, this Court recommends dismissing Petitioner's Ground Two with prejudice.

### C.    Ground Three: Prosecutorial Misconduct

Petitioner alleged that the prosecutor deprived him of a fair trial by committing prejudicial misconduct. Petition, p. 6. In his direct appeal, Petitioner explained that the prosecutor argued facts not in evidence during the opening statement, attempted to lower the State's burden of proof, misstated the law as to the elements of the crime, inflamed the jurors' passions and prejudices, and disparaged defense counsel's role. Appx. (Petitioner's Brief to the Minnesota Supreme Court), pp. 33-40. Petitioner alleged that the prosecutor's conduct violated his due process rights. <u>Id.</u>, p. 33.

In response to Petitioner's claim that the prosecutor committed prejudicial misconduct, Respondent relied exclusively on the Minnesota Supreme Court's analysis of this issue. Resp. Mem., pp. 12-20 (quoting McDaniel, 777 N.W.2d at 749-53). In its decision, the Supreme Court noted that Petitioner did not object to all of the instances of what he was now characterizing as prosecutorial misconduct, such as the State's opening and closing statements, but for the purpose of the court's analysis, the court assumed that all instances were objected to. McDaniel, 777 N.W.2d at 749. Although the court noted that the prosecutor's closing argument, which the trial court had found devolved into an ad hominem attack on the defense attorney, was "disparaging and improper," the Minnesota Supreme Court ultimately found no misconduct on the part of the prosecutor, concluding that the prosecutor's comments did not play a substantial part in influencing the jury to convict. Id., at 752-53.

In the context of habeas proceedings, relief shall not be granted "for 'errors or defects [that] do not affect the substantial rights of the parties.'" Chapman v. California, 386 U.S. 18, 22 (1967) (quoting 28 U.S.C. § 2111), abrogated on other grounds by Brecht v. Abrahamson, 507 U.S. 619 (1993). "[A] reviewing court finding [due process] error should ask whether the flaw . . . 'had substantial and injurious effect or influence in determining the jury's verdict.'"[7] Hedgpeth v. Pulido, 555 U.S. 57, 58 (2008) (per curiam) (citing and quoting Brecht, 507 U.S. at 623).

---

[7] This standard, known as the Brecht harmless-error standard, has effectively replaced the previous harmless-error standard described in Chapman, which held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24 (1967) (emphasis added). Certain types of error, known as "structural defects," continue to be analyzed under Chapman. Structural defects "defy analysis by harmless-error standards. The existence of such defects—deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect

"[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable."  Fry v. Plier, 551 U.S. 112, 119 (2007) (emphasis in original) (citing Mitchell v. Esparza, 540 U.S. 12, 18 (2003) (per curiam)). Further, "even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law . . . [habeas courts] must apply Brecht's harmless-error analysis, unless the error was a structural defect in the trial that defies [such] analysis."[8]  Toua Hong Chang v. Minnesota, 521 F.3d 828, 832 (8th Cir. 2008), cert. denied, 555 U.S. 931 (2008) (citing Brecht, 507 U.S. at 629); see also Inthavong v. La Marque, 420 F.3d 1055, 1059, 1061 (9th Cir. 2005) ("To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was 'contrary to ' or an 'unreasonable application' of

---

the entire trial process."  Brecht, 507 U.S. at 629-30 (citing Arizona v. Fulminante, 499 U.S. 279, 307-09 (1993)) (internal quotation marks omitted).

> The opinion in Brecht clearly assumed that the [harmless-error] standard would apply in virtually all § 2254 cases.  It suggested an exception only for the unusual case in which a deliberate and especially egregious [structural] error . . . infect[s] the integrity of the proceeding.

Fry v. Pliler, 551 U.S. at 117  (internal quotation marks omitted) (citing Brecht, 507 U.S. at 638).

[8]     The Supreme Court has not resolved the matter of whether the AEDPA subsumes the Brecht standard, or if the two act in conjunction.  The Court stated in Fry that while the AEDPA has not replaced Brecht, lower courts are not required to implement both tests since Brecht encompasses the AEDPA.  551 U.S. at 119-20. Although the Sixth Circuit has held that Brecht's "determination of whether an error had a 'substantially injurious' effect on the jury's verdict is broader and thus 'subsumes' the question whether the state court reasonably applied Chapman," Ruelas v. Wolfenbarger, 580 F.3d 403, 412 (6th Cir. 2009), cert. denied, 130 S. Ct. 3322 (2010), the Eighth Circuit opined that the Brecht test applies after the AEDPA determination of unreasonableness.  See Toua Hong Chang, 521 F.3d at 832.

Supreme Court harmless error precedent, and (2) that the Petitioner suffered prejudice under Brecht from the constitutional error.").

"[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The Eighth Circuit test for prosecutorial misconduct is as follows:

> 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial . . . If this court reaches the second step, the factors we consider are: 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court.

United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000) (citations omitted). A petitioner must show "that there is a reasonable probability that the error complained of affected the outcome of the trial, i.e., that absent the alleged impropriety the verdict probably would have been different." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995 (citations omitted).

### 1.    Arguing Facts Not in Evidence

Petitioner maintained in his direct appeal "that the prosecutor argued facts not in evidence by discussing in his opening statement that: (1) the One-Nines have violent rivalries with the Emerson Murder Boys, the Murder Squad, and the Double L, and (2) [Petitioner] is known as "Mookie" on the streets, and Double L has a member named Mookie who does not like sharing the nickname. As the trial progressed, the state did not present any evidence on those two points." McDaniel, 777 N.W.2d at 749.

The United States Supreme Court has held that a defendant is not denied due process when a prosecutor summarizes evidence he expects to introduce during trial, but such evidence is never presented.  See Frazier v. Cupp, 394 U.S. 731, 733-35 (1969); see also U.S. v. Arradondo, 483 F.2d 980, 985 (8th Cir. 1973) (agreeing with the Ninth Circuit that a rule requiring a mistrial when expected testimony is not substantiated with evidence would be inappropriate).  The Court determined that the trial judge's instruction to the jury not to consider either counsels' statements as evidence was sufficient to protect the Petitioner's due process rights.[9]  See Frazier, 394 U.S. at 734-35.

In this case, the Minnesota Supreme Court held that there was no prosecutorial misconduct because the trial court "repeatedly instructed the jury that the lawyers' opening statements and closing arguments are not evidence that should be considered."  McDaniel, 777 N.W.2d at 750.  Under federal law, the trial court's instruction was sufficient to prevent any due process violation.

### 2.    Misstating the Burden of Proof

Petitioner argued that the prosecutor sought to lower the burden of proof during his closing argument by stating:

> [T]hough the defendant comes in here cloaked with the presumption of innocence where the burden rests on me to prove his guilt beyond a reasonable doubt, many men and women have come into rooms just like this like he has, who have left these rooms after having been found guilty by proof beyond a reasonable doubt.

Id.

---

[9]    "[I]n all cases, juries are presumed to follow the court's instructions."  CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009) (citing Greer v. Miller, 483 U.S. 756, 767 n.8 (1987)).

The Minnesota Supreme Court noted that it confronted precisely the same argument in State v. Martin, 773 N.W.2d 89, 105 (Minn. 2009), a case arising out of the trial of Martin and Jackson. The court observed:

> In Martin we directly addressed the same alleged burden-shifting argument. The appellant claimed that the prosecutor reduced the State's burden of proof by stating that many people are still convicted under the "stiff burden" of proof beyond a reasonable doubt. Martin, 773 N.W.2d at 105. We concluded that the prosecutor's argument neither misstated nor shifted the burden of proof—rather, "it was a legitimate explanation of the State's burden." Id. We further found "no error, let alone plain error." Id. We reach the same conclusion here.

McDaniel, 777 N.W.2d at 750.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." Estelle v. Williams, 425 U.S. 501, 503 (1976). Further, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "The Government must prove every element of the offense charged beyond a reasonable doubt . . . ." Old Chief v. U.S., 519 U.S. 172 (1997) (citation omitted). "[T]he prosecution may not improperly suggest that the defendant has the burden to produce evidence." U.S. v. Swift, 623 F.3d 618, 623 (8th Cir. 2010) (marks and citations omitted).

This Court agrees with the Minnesota Supreme Court that the prosecutor correctly stated the burden of proof. The prosecutor merely stressed to the jury that while the State has the burden of proof beyond a reasonable doubt, it is not an insurmountable standard. In addition, the prosecutor "restated the burden of proof on

the State to prove every element of the offense beyond a reasonable doubt numerous times throughout his closing argument, making any possible confusion or prejudice from this statement minimal at best." McDaniel, 777 N.W.2d at 751. Thus, the prosecutor's comments could not have had a substantial and injurious effect or influence on the jury's verdict.

### 3. Misstating the Law

Petitioner contended that "the State improperly misstated the law during closing argument by saying that 'all the State need[s] to prove was that the defendant was driving the car.' Specifically, [Petitioner] relies on the prosecutor's statement: 'Did the defendant, was he driving the car. If you say he was driving the car, then we have met our burden of proof with respect to each and every element of both of these crimes and the defendant is guilty beyond a reasonable doubt." McDaniel, 777 N.W.2d at 751 According to Petitioner, "this seriously misstates the law and minimizes the State's burden of proof." Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 35. The Minnesota Supreme Court considered the prosecutor's remarks in the context of the closing arguments as a whole and noted that the prosecutor was addressing one of the central issues of the case—the driver's identity, and that the State clarified several times that it had the burden of proving each element of the offense beyond a reasonable doubt. McDaniel, 777 N.W.2d at 751. The court further observed that the defense similarly framed the issue of the driver's identity: "The trial is about is there proof beyond a reasonable doubt that Mr. McDaniel was the driver of that car. This is what the trial is about. That's what we're looking here for. That's the evidence we are looking at." Id.

"'A claim of prosecutor misconduct in closing argument. . . calls for an exceptionally limited review of this issue. Federal habeas relief should only be granted

if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have <u>sua</u> <u>sponte</u> declared a mistrial.'" <u>Evans v. King</u>, Civ. No. 10-4045 (SRN/SER), 2012 WL 4128682 at *20 (D. Minn. July 30, 2012) (citing and quoting <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999)).

This Court rejects any suggestion that the prosecutor's comment regarding the State's need to prove the identity of the driver of the car constituted misconduct. Nor does the Court conclude that the comments were so egregious that they tainted the trial to the point where Petitioner's conviction was the result of a denial of due process. Further, the prosecutor clarified the State had the burden of proving each element of the offense beyond a reasonable doubt and then described the other elements of the offense in detail at the closing argument. <u>McDaniel</u>, 777 N.W.2d at 751. On this record, the Court finds no misconduct by the prosecutor, and that his comments during closing argument on the burden of proof did not have had a substantial and injurious effect on the jury's decision.

### 4.    Inflaming Jurors' Passions or Prejudices

Petitioner alleged that "the prosecutor inflamed the jury by 'attempting to make this trial about gangs, rather than whether [Petitioner] committed the charged offense.' Specifically, [Petitioner] argues that the prosecutor improperly used a theme of "arrogance" throughout the trial to describe gang behavior, and to discuss an incident that occurred during the trial when Willie Watkins, a close friend of [Petitioner] and a member of the One-Nines, entered the courtroom to display a 'trigger finger' while State witness Paris Patton testified." <u>McDaniel</u>, 777 N.W.2d at 751. In particular, the prosecutor said:

> The defendant's good friend Willie Watkins sat on that side of the courtroom and was making gestures to Paris Patton, threatening, showing him his trigger finger.
>
> ***
>
> These gangbangers are so arrogant, so confident that they can spread this climate of fear that they would bring that attitude right here in the courtroom and threaten that young man while he's on the witness stand testifying.

Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 36.

The United States Supreme Court has held that "[p]rosecutors have a special duty to seek justice, not merely to convict." Connick v. Thompson, 131 S.Ct. 1350, 1362 (2011) (citations and internal quotation marks omitted); see also Young v. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 803 (1987) (citation omitted) ("The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."). Under federal law, "[a] prosecutor may not make an appeal to the jury that is 'directed to passion or prejudice rather than to an understanding of the facts and of the law.'" U.S. v. Phillips, 664 F.2d 971, 1030 (5th Cir. 1981) (quoting U.S. ex rel. Perry v. Mulligan, 544 F.2d 674, 680 (3d Cir. 1976), cert. denied, 429 U.S. 972 (1977)), overruled on other grounds; see also Viereck v. U.S., 318 U.S. 236, 248 (1943) (finding that prosecutor's statement to jury concerning wartime duty was improper as it appealed to jurors' passions).

"To determine whether [a] prosecutor's comments undermined the fairness of the trial, we look to 'the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury and the strength of the competent proof to establish the guilt of the accused.'" Davis v. Burt, 100 Fed.

Appx. 340, 348 (6th Cir. 2004) (quoting <u>Hamblin v. Mitchell</u>, 354 F.3d 482, 495 (6th Cir. 2003).

"The Eighth Circuit Court of Appeals has been very reluctant to grant habeas corpus relief to state prisoners, based solely on objectionable prosecutorial rhetoric." <u>Jones v. Fabian</u>, Civ. No. 09-2781 (JNE/FLN), 2010 WL 2734299 at *15 (D. Minn. 2010).  For example, in <u>Kellogg v. Skon</u>, 176 F.3d 447 (8th Cir.1999), the Eighth Circuit noted that during trial:

> [T]he prosecutor also referred to [the petitioner] as a 'monster, a 'sexual deviant,' and a 'liar.'... [Footnote omitted.] Not only are these comments an improper 'personal expression of [the] defendant's culpability, ...' [citation omitted] but the 'monster' and 'sexual deviant' comments also create inflammatory prejudice.  They compel the jury to focus on the grossness of the alleged conduct, rather than whether the defendant engaged in the conduct.  They have no place in a courtroom.  However, the question is not whether the prosecutor's remarks are 'undesirable or even universally condemned.'... The remarks must make the entire trial fundamentally unfair.... The court instructed the jury that they were to make their decisions based on the evidence and that counsel's arguments were not evidence. These comments did not 'manipulate or misstate the evidence,' nor did they 'implicate other specific rights of the accused.'... The weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks.

<u>Id.</u> at 451–52 (citations omitted).

Noting that the prosecutor pointed to the courtroom episode as an example of "gang" intimidation and did not attempt to persuade the jury that Petitioner was responsible for Watkin's behavior, the Minnesota Supreme Court determined that the prosecutor did not commit misconduct because his comments about gangs were not directed specifically to Petitioner, and the trial court gave a cautionary instruction to the

jury to avoid prejudice. <u>McDaniel</u>, 777 N.W.2d at 751. Such a conclusion is not at odds with federal jurisprudence. Additionally, the prosecutor's description of gang behavior as "arrogant" pales in comparison to the prosecutor's comments in <u>Kellogg</u> and there is no indication that the use of the term played any role whatsoever in Petitioner's conviction. Furthermore, even if these statements had some prejudicial effect on the jury, they must be considered in light of the overall evidence presented of Petitioner's guilt. After weighing the possible effect of the prosecutor's statements against the evidence of Petitioner's guilt,[10] this Court finds that the prosecutor's comments did not have a substantial and injurious effect on the jury's decision. Accordingly, the court's ruling on Petitioner's claim that the prosecutor inflamed the juror's passions and prejudices was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of facts in light of the evidence presented at trial.

### 5.    Disparaging Defense Counsel

Petitioner contended that "the prosecutor repeatedly disparaged defense counsel and his role in the proceedings." <u>McDaniel</u>, 777 N.W.2d at 751. The prosecutor stated:

> There's a reason why attorneys' arguments, closing
> arguments, opening statements, questions and so forth are
> not evidence and cannot be considered by you as evidence.
> Because the attorneys will, oftentimes like to manipulate the
> evidence, make it what it isn't—hoping hopes [sic] that you
> don't recall the evidence that was presented and then

---

[10]    For example, "Pettis told the jury that on May 3 . . . [he] saw Jackson and Martin standing in the yard across the street with guns. Pettis saw Lynch lying on the ground and Jackson and Martin jump into a white car." <u>McDaniel</u>, 777 N.W.2d at 743-44. "Ten-year-old S.H., who lived next door, testified that he saw two men chase Lynch, and then saw Lynch stop and put his hands up saying 'I quit I quit' before one of the men shot him six or seven times. S.H. also saw the two men get into a white car after the shooting." <u>Id.</u> at 744. Renardo Smith testified that Petitioner told him that Jackson did the shooting and that [Petitioner] was 'just driving.'" <u>Id.</u>

misrepresent the evidence to you and ask you to rely on their representations of the evidence as if that's the truth.

There's a reason why arguments aren't evidence and that is because, one of the reasons is because when the evidence that comes from the witness stand if it doesn't fit and an attorney stands up and gives you an explanation when that question was—when the opportunity for introducing that evidence was offered and passed by, it gives them the advantage by filling in the blanks for you in their own words when their clients can't do it for themselves.

Id. at 751-752.  In addition, the prosecutor accused defense counsel of misrepresenting the evidence and lying on behalf of his client.  Id. at 752.

When addressing this issue, the Minnesota Supreme Court stated:

A prosecutor has special responsibilities as a representative of the people. Specifically,

[i]n final argument to the jury, a prosecutor is governed by a unique set of rules which differ significantly from those governing counsel in civil suits, and even from those governing defense counsel in the very same criminal trial. These special rules follow directly from the prosecutor's inherently unique role in the criminal justice system, which mandates that the prosecutor not act as a zealous advocate for criminal punishment, but as the representative of the people in an effort to seek justice.

[State v.] Walsh, 495 N.W.2d [602], 606 [Minn. 1993]. Prosecutors 'must avoid inflaming the jury's passions and prejudices' against defendants.  State v. Bailey, 677 N.W.2d 380, 404 (Minn.2004).  Although a prosecutor can argue that a particular defense has no merit, a prosecutor "may not belittle the defense, either in the abstract or by suggesting that the defense was raised because it was the only defense that might succeed."  [State v.] Martin, 773 N.W.2d [89], 108 (citing State v. Griese, 565 N.W.2d 419, 428 (Minn.1997)).

Id.

The Minnesota Supreme Court found that the prosecutor's comments in this case constituted improper personal attacks against defense counsel.  Id.  Even so, "it is not

enough that the prosecutor's remarks were undesirable or even universally condemned." Darden, 477 U.S. 180-181 (quotation omitted). To make out a constitutional claim, the remarks must "so infect the entire proceeding as to 'impede the jury's ability to judge the evidence fairly.'" Banks v. Workman, 692 F.3d 1133, 1149 (10th Cir. 2012) (citation omitted).

The Minnesota Supreme Court determined that because there was extensive evidence supporting Petitioner's conviction (see n. 10, supra) and because the court repeatedly reminded the jury that lawyers' statements are not evidence, the misconduct did not play "a substantial part in influencing the jury to convict . . . ." Id. at 752-53. The court also employed a standard of review nearly identical to the Brecht standard (see n. 7, supra), and found no reversible error. This Court is satisfied that the prosecutor's comments did not have a substantial and injurious effect on the jury's verdict.

In summary, this Court finds that the Minnesota Supreme Court's rulings with respect to Petitioner's challenges to the prosecutor's conduct during trial and in closing argument were not contrary to, or an unreasonable application of, clearly established federal law, nor was there an unreasonable determination of facts in light of the evidence presented at trial. Further, none of the questions and statements by the prosecutor had a substantial and injurious effect on the jury's decision. Therefore, Ground Three should be dismissed with prejudice

### D. **Ground Four: Petitioner's Sentence Constituted Cruel or Unusual Punishment**

Petitioner submitted that the trial court violated his constitutional right to be free from cruel or unusual punishment by imposing a sentence of life in prison, where the sentence was not proportionate to his intent. Petition, p. 6.

In opposition, Respondent relied exclusively on the Minnesota Supreme Court's analysis of the issue. Resp. Mem., pp. 21-23 (quoting McDaniel, 777 N.W.2d at 753-54). There, the Minnesota Supreme Court found that Petitioner's sentence was proportional to the crime he committed, noting specifically that in determining whether punishment is "cruel or unusual," the court does not distinguish between the principal actor and those who are aiders and abettors. Id., p. 22 (quoting McDaniel, 777 N.W.2d at 754). The court concluded that "[w]e have never held that a life sentence without the possibility of release is cruel or unusual punishment within the meaning of the Minnesota Constitution when imposed on a defendant for aiding and abetting" and that Petitioner failed to carry his "heavy burden" to show that his sentence violated the Minnesota Constitution. Id., p. 23 (quoting McDaniel, 777 N.W.2d at 754).

Petitioner's emphasis on proportionality conforms to the United States Supreme Court's holding that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" Graham v. Florida, 130 S. Ct. 2011, 2021 (2010) (quoting Weems v. United States, 217 U.S. 349, 367 (1910)). However, this principal does not support Petitioner's claim.

Petitioner was convicted of intentionally aiding and abetting Lynch's murder. McDaniel, 777 N.W.2d at 754.

Minnesota law defines accomplice liability as follows:

> A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Minn. Stat. § 609.05, subd. 1. A conviction for aiding and abetting first degree premediated murder results in a life sentence without the possibility of release. Minn. Stat. §609.106, subd. 2(1).

The Minnesota Constitution prohibits "cruel or unusual punishments." Minn. Const. art. I, §5. As the Minnesota Supreme Court observed:

> The language differs from the United States Constitution provision, which provides that no 'cruel <u>and</u> unusual punishments' should be inflicted. U.S. Const. amend. VIII (emphasis added). We have explained that "[t]his difference is not trivial," and the Minnesota Constitution provides more protection than the U.S. Constitution. <u>State v. Mitchell</u>, 577 N.W.2d 481, 488 (Minn. 1998). Although the clauses are different, we rely on the United States Supreme Court's construction of the Eighth Amendment to guide our interpretation of Article 1, Section 5, of the Minnesota Constitution.
>
> When determining whether a punishment is cruel or unusual, we look to the proportionality of the crime to the punishment assigned. <u>Mitchell</u>, 577 N.W.2d at 489. In deciding whether a particular punishment is cruel and unusual, the U.S. Supreme Court determines whether the punishment comports with "evolving standards of decency that mark the progress of a maturing society." <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion). Relying on this analysis in <u>Mitchell</u>, we concluded that because "we cannot say that the life imprisonment of a 15–year–old child convicted of first-degree murder offended evolving standards of decency in 1994 or was generally abhorrent to the community," such a punishment was not 'cruel' under the Minnesota Constitution. 577 N.W.2d at 490. We also concluded that the punishment in Mitchell was not 'unusual.' <u>Id.</u>

<u>McDaniel</u>, 777 N.W.2d at 753.

Minnesota courts have never held that a life sentence without the possibility of release violates the Minnesota constitution's ban on "cruel or unusual" punishments when imposed on a defendant for aiding and abetting. <u>Id.</u> (citing <u>State v. Crow</u>, 730

N.W.2d 272, 281-82 (Minn. 2007)) (holding that a life sentence without the possibility of release for aiding and abetting first degree murder during a kidnapping did not violate the Cruel or Unusual Punishment Clause of the Minnesota Constitution). Consequently, under Minnesota law, the fact that Petitioner was an accomplice and not the principal actor has no bearing on whether he may be sentenced to the full extent of the principal. See Crow, 730 N.W.2d at 280-82.

The result is the same applying federal law. The Eighth Amendment to the United States Constitution, which forbids cruel and unusual punishments, "'does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "'grossly disproportionate" to the crime.'" Ewing v. California (2003) 538 U.S. 11, 23, quoting conc. opn. of Kennedy, J. in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)).[11] "[T]he gross disproportionality principle [is] applicable only in the 'exceedingly rare' and 'extreme' case." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (citation and internal quotation omitted). See also Windham v. Merkle, 163 F.3d 1092, 1106-07 (9th Cir. 1998) (a sentence of fifteen years to life for aiding and abetting murder did not constitute cruel and unusual punishment); Mouton v. Runnels, Civ. No. 03-5691, 2006 WL 1343679 at *23 (N.D. Cal. 2006) (rejecting habeas petition based on theory that a sentence of twenty-five years to life in prison for aiding and abetting murder violated petitioner's Eighth and Fourteenth Amendment rights).

This case is neither extreme nor rare. Petitioner's sentence was in proportion to the jury's findings regarding Petitioner's key role in Lynch's execution-style murder and

---

[11] The Court in Ewing went on to observe that "the proportionality principles in our cases distilled in Justice Kennedy's concurrence guide our application of the Eighth Amendment in the new context that we are called upon to consider." 538 U.S. at 23.

therefore, did not violate the Eighth Amendment. This Court finds that the Minnesota Supreme Court's ruling on Petitioner's sentence was not contrary to, or an unreasonable application of, clearly established federal law, and consequently recommends that Ground Four be dismissed with prejudice.

### E.    Ground Five: Jackson's Unavailablity for Testimony

Petitioner's final argument was that his Sixth Amendment rights were violated when the trial court allowed Patton to testify that he heard Jackson describe how he had shot Lynch. Petition, p. 5; Appx. (Petitioner's Supplemental Brief to the Minnesota Supreme Court), pp. 79-84. Respondent countered that Petitioner's claim regarding Jackson's "unavailability" to testify was without merit, as Petitioner failed to seek any other information regarding Jackson's "unavailability" other than the defense attorney's statement that Jackson would invoke his right to remain silent if called upon to testify. Resp. Mem., p. 24. Further, because Jackson's statements to Patton describing how he shot Lynch were non-testimonial, the evidentiary restriction promulgated in Crawford v. Washington, 541 U.S. 36 (2004), did not apply. Id., Respondent further contended that even if the trial court erred by admitting Patton's testimony as to what Jackson had said, the error was harmless because multiple witnesses named Jackson as the person who shot Lynch and Petitioner himself told Patton that Jackson was the shooter. Id.

Patton, like Petitioner, Martin and Jackson, was a member of the One-Nines gang. Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 16 (citing Tr., pp. 1284, 1295). Patton testified that Jackson said Lynch was on his knees pleading for his life when Jackson shot him. Id. (citing Tr., p. 1336). Patton stated that Jackson was laughing when he said this. Id., p. 17 (citing Tr. 1336). Jackson also said that if everybody shuts up, "they will beat it." Id. (citing Tr. 1336).

At trial, the prosecutor stated:

> I have talked to Michael Colich who is Mr. Jackson's attorney. He has advised me that were I to call Cornelius Jackson to confirm or deny the statement he would invoke his Fifth Amendment right to remain silent which he has a right to do. So this is one of those exceptions that we have to show unavailability of declarant. I think I've just done that. Then I think the next part is, it is a statement against interest. I think it clearly is. . . .

Tr. 1277 [Docket No. 18].[12]  The trial court ruled that Patton's testimony was admissible.

Id.

Petitioner alleged that the trial court erred by failing to verify that Jackson would invoke his Fifth Amendment right to silence if asked to testify, and therefore Jackson was not "unavailable." See Appx. (Petitioner's Supplemental Brief to the Minnesota Supreme Court), p. 80. In connection with his pro se supplemental brief, Petitioner submitted an affidavit from Jackson in which Jackson adamantly denied ever invoking his Fifth Amendment right to remain silent and accused either the prosecutor or his defense attorney of lying about it. Appx. (Affidavit of Cornelius Jackson), pp. 88-89 Petitioner also alleged that the statement regarding Jackson's unavailability was the product of "collusion or fraud." Appx. (Petitioner's Supplemental Brief to the Minnesota Supreme Court), p. 82.

The Confrontation Clause of the Sixth Amendment to the United States Constitution "permit[s] admission of '[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" Bullcoming v. New Mexico, 131 S. Ct. 2705,

---

[12]  Respondent cited to certain pages of the trial transcript in its Response to the Petition, but did not initially provide them to the Court. At the Court's request, these pages were provided and have now been filed. See Docket No. 18.

2713 (2011) (quoting <u>Crawford</u>, 541 U.S. at 59); <u>see also</u> <u>United States v. Spencer</u>, 592

F.3d 866, 878 (8th Cir. 2010) (citation omitted) ("The Confrontation Clause bars

admission of testimonial statements of a witness who did not appear at trial unless he

was unavailable to testify, and the defendant had had a prior opportunity for cross-

examination."). Petitioner's attorney conceded that the statement to Patton was a "non-

testimonial" statement.  Tr., p. 1276 [Docket No. 18].[13]

While the Supreme Court has not yet defined what is meant by a testimonial

statement, (<u>see</u> <u>Crawford</u>, 541 U.S. at 68), it did state:

> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,"; "extrajudicial statements ... contained in

---

[13]    The following colloquy took place at trial:

> [Prosecutor]: All right.  <u>Crawford</u> is raised where the statement is testimonial.  That is when it was made in preparation for testimony in a trial.  So, for example, if the police were to have taken a statement from Cornelius Jackson in preparation for the trial against Jonard McDaniel, that's when <u>Crawford</u> applies.  If it's a non-testimonial statement like this is then <u>Crawford</u> does not apply, and it's very clear from <u>Crawford</u> that there is a distinction and—

> [Defense Attorney]:  I agree.
>                             ***
> [Prosecutor]: [S]o then since <u>Crawford</u> does not apply, we look at see whether or not it's admissible under a hearsay exception.

> The Court:  Which is it?

> [Prosecutor]:  A statement against interest.

Tr., pp. 1276-1277 [Docket No. 18].

> formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," <u>White v. Illinois</u>, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it.

<u>Crawford</u>, 541 U.S. at 51-52 (internal citations omitted).

Recognizing that the term "'testimony'" . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" the Supreme Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." <u>Id.</u> at 51 (citation and marks omitted). In a subsequent case, the Supreme Court found that "[w]e are not aware of any early American case invoking the Confrontation Clause or the common-law right to confrontation that did not clearly involve testimony as thus defined. Well into the 20th century, our own Confrontation Clause jurisprudence was carefully applied only in the testimonial context." <u>Davis v. Washington</u>, 547 U.S. 813, 824 (2006) (citations omitted); <u>see</u> <u>also</u> <u>Michigan v. Bryant</u>, 131 S.Ct. 1143, 1155 (2011) ("the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial.") (citation omitted). Based on <u>Crawford</u> and its progeny, the Eighth Circuit has held that an "out-of-court statement of a co-defendant made unknowingly to a government agent is not 'testimonial' within the meaning of <u>Crawford</u>." <u>See</u> <u>United States v. Dale</u>, 614 F.3d 942, 956 (8th Cir. 2010) (string citation omitted).

Petitioner's Sixth Amendment challenge fails because Jackson's statements to Patton were not testimonial. There was no state actor involved, and the statements were made by Jackson to Patton, a fellow gang-member, spontaneously. Appx. (Petitioner's Brief to the Minnesota Supreme Court), p. 17 (citing Tr., p. 1336). Indeed, there is no evidence to suggest that Jackson, in making the statements to Patton, "would reasonably expect [the statements] to be used prosecutorially" or that an objective witness would "reasonably ... believe that the statement would be available for use at a later trial.'" <u>Crawford</u>, 541 U.S. at 51-52.

This Court finds that the trial court's ruling on the admission of Patton's testimony regarding Jackson's statements to him was not contrary to, or an unreasonable application of, clearly established federal law, and consequently, Petitioner's claim on Ground Five should be dismissed with prejudice. [14]

---

[14]    Once it is determined that the Sixth Amendment does not bar the admissibility of the Jackson's statement, then the only remaining question is whether Petitioner had evidentiary grounds for excluding the statement. <u>See</u> <u>United States v. Watson</u>, 525 F.3d 583, 589 (7th Cir. 2008), <u>cert.</u> <u>denied</u>, 129 S.Ct. 972 (2009) ("The Constitution restricts the admission of [a testimonial] type of out-of-court statement, while only the rules of evidence restrict the [admissibility of nontestimonial out-of-court statements]."). Thus, whether Jackson's statements amounted to inadmissible hearsay or is governed by one of the exceptions to the hearsay rule (<u>e.g.</u> admission against interest, Minnesota Rule of Evidence 804(b)(3)) is a state evidentiary issue, which is reviewed in a federal habeas proceeding only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process. <u>Logan</u>, 994 F.2d at 1330 (8th Cir. 1993); <u>Moore</u>, 760 F.2d at 886 (a habeas petitioner must establish that the evidentiary ruling was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair."). This Court cannot conclude that the trial court's ruling on this issue was so prejudicial as to be a denial of due process. Indeed, Jackson's statements to Patton were classic "statements against interest" made in the context of a conversation between Patton and Jackson a month after the shooting. Tr., p. 1335. Of particular note is the fact that Jackson's statements to Patton did not name or implicate Petitioner at all. This Court finds no error in the trial court's decision to allow Patton to testify about Jackson's statements to him.

## V.    RECOMMENDATION

For all the reasons set forth above IT IS RECOMMENDED that:

Jonard Brandon McDaniel's Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **DISMISSED WITH PREJUDICE**.


Dated: November 29, 2012                    *s/ Janie S. Mayeron*
                                            JANIE S. MAYERON
                                            United States Magistrate Judge


### NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 13**, **2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.